No. 11,027.

TOWNSEND v. TOWNSEND.

Decided May 4, 1925. Rehearing denied June 1, 1925.

Action on contract.   Judgment for defendant.

*Affirmed.*

1.  HUSBAND AND WIFE—*Contract Construed.*   In a contract between husband and wife providing that she would quitclaim all demands on account of money paid him, the word paid is construed to mean loaned or advanced, and a loan made to him by her before the execution of the contract held included within its terms.

2.  APPEAL AND ERROR—*General Findings.*   On review, where the findings are general, it will be presumed that the trial court found the facts necessary to support the judgment.

3.  HUSBAND AND WIFE—*Separation Agreement Construed.*   A loan by a wife to her husband held not within the terms of a separation contract wherein he agreed to save her harmless from outstanding endorsements and obligations entered into by her on his behalf.

*Error to the District Court of the City and County of Denver, Hon. Henry J. Hersey, Judge.*

Mr. N. WALTER DIXON, Mr. JOHN T. BOTTOM, Messrs. CAPPS, CANTEY, HANGER & SHORT, for plaintiff in error.

Messrs, CLAY & BENTON, Mr. H. RIDDELL, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

THE plaintiff in error was defeated on trial to the court in a suit brought by her against defendant in error, her former husband, to recover about $115,000, on a written contract entered into between them June 8, 1915, on the eve of their divorce, and she brings the case here on error. There was a general finding for defendant.

The essential facts are briefly these: Plaintiff and defendant were married June 1, 1905. Both had large incomes but they spent more and got in debt. January 27, 1913, to get money to enable him to pay some debts, $70,000 was borrowed and she mortgaged her land in Texas to secure their joint note for that sum. She says he had all of it; he admits he had $46,000 and says he had no more. June 18, 1914, plaintiff sold part of the mortgaged land to one Joseph who assumed the whole of the $70,000 as part consideration. It does not appear how much of this note remained unpaid at the date of the written contract but ˙Joseph made payments from time to time and finally discharged the note in full.

The contract in question recites the marriage, the imminence of the divorce and the necessity for adjustment of their obligations and property rights, and then sets out their mutual agreements in five paragraphs, of which the third and fifth are as follows:

"Third:   That the said Georgia S. Townsend shall and hereby does forego and forever quitclaim any and all demands or claims of any kind or nature against her said husband, John R. Townsend, for and upon account of all moneys heretofore paid by her to her said husband or for his account.

"Fifth: That the said John R. Townsend shall further, on or before July first, 1915, cause the release of his said wife, Georgia S. Townsend, and shall at all times save her harmless from each and all of the various endorsements and obligations entered into by her on his behalf in relation to the execution or endorsement of any promissory notes or other obligations now outstanding, wherein and whereby said Georgia S. Townsend was in fact only an endorser or guarantor of any such promissory notes or other obligations, whether the same are signed by her as joint maker or more expressly as guarantor or endorser."

The plaintiff rests her case on paragraph 5. The defendant rests his upon paragraph 3.

It seems that the facts are with the defendant. It is true that plaintiff paid, gave, loaned or advanced to defendant at least $46,000, and that she afterwards discharged their joint note, secured by her mortgage in which he joined, which produced the money so paid; but defendant claimed that he executed the note and mortgage merely to satisfy the attorneys for the mortgagee and that she loaned him the $46,000, and if she did it, as in one place she testified she did, and as the court upon that and other evidence, would have been justified in finding, the transaction falls within the terms of paragraph 3; that is, the $46,000 was "moneys heretofore paid by her to her said husband." Paid, of course, means given, loaned or advanced. It could not mean paid in the technical sense, that is, in discharge of a debt, because she would then have nothing to "forego" or "quitclaim."

Since the findings were general we must suppose the court found that whatever amount he received was a loan, and this alone would compel an affirmance of a judgment.

But the 5th paragraph cannot be construed to cover this note for several reasons:

First. Since plaintiff had in effect paid the note before the date of the contract by deducting it from the purchase price of her land, it could not rightly be said to be then "outstanding."

Second.  If it might still be said to be outstanding because Joseph had not then paid it all, nevertheless she has suffered no damage since, because the note is now paid.

Third.  To release or to save harmless usually, though perhaps not necessarily, refers to future losses or to present or future liabilities; but when the contract was made plaintiff had then already suffered all she has ever suffered by reason of it; consequently the words "release" and "save harmless" are not very apt to express the meaning the plaintiff seeks to give to them.

Fourth.  If "save harmless" means to repay a loan, it is inconsistent with paragraph 3.

Fifth.  Release or save harmless could not reasonably mean to pay the *note* because that would be to benefit Joseph and not the plaintiff.

Sixth.  The natural and obvious thing to say if she wanted to be reimbursed for the loss was that he should repay her that amount.

Judgment affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE WHITFORD concur.