## No. 11,766.

### CITY OF ALAMOSA *v.* HOLBERT.

Decided December 5, 1927.

Action for money due under a written contract. Judgment for plaintiff.

### *Affirmed.*

1. APPEAL AND ERROR—*Findings—Court Remarks.* Remarks of the trial court made during or at the end of a trial, are not findings and cannot be so regarded.

2. *Findings.* Where there is a general finding in favor of a party, the presumption is that the court found all the facts necessary to sustain the judgment.

3. *Judgment—Evidence.* On review, all questions of fact must be resolved in favor of the judgment, and the evidence must be viewed in the light most favorable to the party prevailing in the court below.

4. JUDGMENT—*Contract—Quantum Meruit.* In an action for money due under a written contract, the contention that the judgment was rendered on the theory of quantum meruit, overruled, notwithstanding the remark of the trial judge before and at the time of rendering the judgment, that it should be entered as upon quantum meruit.

*Error to the District Court of Alamosa County, Hon.
Jesse C. Wiley, Judge.*

Mr. W. W. PLATT, for plaintiff in error.

Mr. JAMES D. PILCHER, Mr. CHARLES H. WOODARD, for
defendant in error.

*Department One.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

DEFENDANT in error, herein referred to as plaintiff,
brought suit against plaintiff in error, herein designated
as defendant, or the city, on a written contract for the
sinking of an artesian well. Trial to the court without a
jury, judgment for plaintiff, and defendant brings the
case here.

The contract was entered into February 6, 1924, and
contained the following, among other provisions:

"*Unforeseen difficulties—No claim.*—The contractor
agrees that he will sustain all losses or damages arising
from the action of the elements, the nature of the work
to be done under the contract and specifications, or from
any unforeseen obstructions or encumbrances which may
be encountered in the prosecution of the work.

"*Drilling.*—The well shall be drilled at a place desig-
nated by the engineer. The hole shall be started with
sufficient size to insure a depth of 1200 feet.   *   *   *

The well shall be drilled to sufficient depth to insure
contact with a big artesian sand below the one now fur-
nishing water for the city water works. The engineer
has the authority to decide as to what depth drilling
shall cease.

"*Water.*—The engineer shall, at his discretion, conduct
a twenty-four-hour test of each artesian sand encoun-
tered. The contractor agrees to drill to a deeper sand
in case the engineer deems it necessary after such test or

tests. All water flowing from the well by reason of such test or tests shall be conducted into the city sewer system at the expense of the city.

"*Casing.*—The casing shall be set to a depth as sufficient to exclude or case off all soft or sandy material and said casing shall be firmly embedded in clay or gumbo at the lower end."

For this work the plaintiff was to receive the sum of $2,000.

It appears that there are several artesian sands under the city of Alamosa which supply water and at the time this contract was entered into, the city was being supplied with artesian water from a well about 756 feet deep.

The evident purpose of requiring plaintiff to drill the new well to a depth to insure contact with the big artesian sand below the one then supplying the city with water was to increase the water supply and avoid diminishing the flow from the existing well.

While the contract provided that the consideration should be paid in accordance with semi-monthly estimates furnished by the engineer, the plaintiff appears to have waived those estimates and has never been paid any part of the contract price.

About March 1, 1924, plaintiff commenced the construction of a well and drilled the same to a depth of about 788 feet when the drill-rod stuck in the quicksand and he was unable to complete it, and unable to set the casing according to contract and could not seal it in.

Being forced to abandon that well he moved to a new location selected by himself and the city water superintendent Mr. Bollier, and started the drilling of another well. When plaintiff had drilled the new well to a depth of about 788 feet his drill penetrated some two or three feet into a red heavy gravel. He testified that his bit was then so worn that he could not drill; that he could not cut in and started to pull the drill out; that he and his men agreed that it was a good water sand and he

called for Mr. Johnston, the city's engineer, who drew the contract; that Johnston and he had agreed to set the casing in the first well at 777 feet and when Johnston came they talked over the matter of setting the casing of this new well in the same clay. He then said: "It was a good clay and the contract called for it to be sealed in and he came up and I asked him if he was satisfied with the measurement of the well at 758 feet and he said well he felt he had to be satisfied with what he could measure and had measured it twice and I had once and it tallied and he said we might set the casing in this but with one understanding between me and Mr. Johnston I'll tell the world and that was that I was to go inside of the casing and properly clean it out and drill in to this sand to determine to see if it wouldn't be increased if it didn't properly flow. * * * I reamed it out to eight inches to let the casing go down and we pulled out the reamer and thought we had it safe to go ahead and we attempted to set the casing and failed and we had to pull the casing out and re-ream it to get down to 770 feet, there is where we expected to set the casing at 770 feet, that was some feet above this strata of gravel and sand. * * * We set the casing at 765 or 766 feet * * * and we measured the casing up and it was 769 feet and 9 inches, and it measured that at that time; that is as close as Mr. Bollier could get it without cutting a joint and we thought that was good enough."

Mr. Bollier and others assisted him in setting the casing. He testified that a few days after setting the casing they put in the rods and cleaned it out so that the flow came in pretty strong; that they then cut the pipe off so that they could go inside and drill down to 816 feet and thoroughly develop that sand; that they measured the rods and Mr. Bollier added them up; that after going 816 feet and pulling the rods out they had a big flow of water.

The witness stated that at the first council meeting after the well was completed, Johnston was there and re-

jected his work and would not allow the city to pay for it; that Johnston demanded that plaintiff finish the well; that several days later Johnston wrote him a letter telling him to pull the casing and drill the well deeper, which witness said was an impossibility and something he had never agreed to do; that he told Johnston whenever they set the casing they were done.

Mr. Bollier, the water superintendent, testified that the depth of the casing was 785 feet 7 inches; that after the casing had been set plaintiff drilled further to a depth of 816 feet; that a heavy flow came in; that the well was allowed to flow probably a month before it was turned into the reservoir; that the flow gradually increased until he shut the well off.

Joseph Hays testified that the casing was set at 769 feet 9 inches, after which they went down to 816 feet and cleaned out. Holbert was from four to six weeks sinking the well.

Evidence was introduced showing that there is a water bearing sand at about 730 feet; the next one 760 to 770 feet, and the next one 825 to 850 feet with a strong flow.

Reilly, a witness for defendant, testified that the two wells were getting water from different flows and he further testified that he could not say that the two wells were taking water from the same flow; that the only way he could tell that they were taking water from the same flow was the effect it has on one when the other is open; that whether they were taking it from the same flow he could not say and that the real test is to test the depth.

Before and at the time the court rendered judgment the judge made certain remarks to the effect that judgment ought to be entered as upon a quantum meruit. However, the court made a general finding that the plaintiff was entitled to judgment as prayed for in his complaint and decreed accordingly for the full amount claimed, $2,000 and interest.

The defendant claims that the judgment should be reversed for the following reasons: "(1) Holbert did not

drill his well deep enough to insure contact with a big artesian sand below the one furnishing water to the city waterworks; (2) he ceased drilling before the city engineer determined that he should stop drilling; (3) he refused to drill deeper after the city engineer had conducted a twenty-four-hour test of the Holbert well, had found it necessary to drill deeper and had so notified Holbert verbally and in writing.''

The defendant attaches much importance to the remarks of the trial judge, to which we have referred, and insists that the remarks of the judge show that the judgment was entered upon the theory of a quantum meruit whereas no quantum meruit was pleaded and no evidence in support thereof was offered. In this we think the defendant is mistaken, as to the effect of the judge's remarks.

In *Montrose v. Greeley Bank,* 78 Colo. 240, at 242, (241 Pac. 527) we said: ''The court made no formal findings but only an opinion. We cannot regard the so-called findings in the opinion as controlling. * * * There was then a judgment without findings and we must regard the case as if all findings were for the plaintiff.''

In *Jones v. Boyer,* 68 Colo. 568, at 570, (193 Pac. 492) it was said: ''Remarks may perhaps be called an opinion, but are not findings of fact, properly so-called and have not the force of a special verdict.''

In *Davis v. Larson,* 76 Colo. 527, at 529, (233 Pac. 160) Mr. Justice Denison speaking for the court, said: ''Where the decree contains a general finding only, we presume that the court found every disputed fact in favor of the successful party. * * * We may say here, as we have repeatedly said before, that the remarks of the court made during or at the end of the trial wherein the judge expresses his opinion on various points in the case are not findings and cannot be so regarded. * * * They should be written, unmixed with discussion or opinion and may well be in the decree.''

Numerous authorities are cited in the opinion sustain-

ing those views.   See also *Aetna Co. v. Rico,* 80 Colo.
536, 252 Pac. 815.

Where there is a general finding in favor of a party
the presumption is that the court found all the facts nec-
essary to sustain the judgment.   *Bank v. O'Connell,* 77
Colo. 275, 236 Pac. 1002; *Townsend v. Townsend,* 77 Colo.
322, 324, 236 Pac. 1017; *Davis v. Larson, supra.*

On review, all questions of fact must be resolved in
favor of the judgment, and in considering the evidence
we must view it in the light most favorable to the party
prevailing in the court below.   *Boldt v. Motor Co.,* 74
Colo. 55, 218 Pac. 743; *Collins v. Heath,* 76 Colo. 600, 233
Pac. 838; *Ozman v. Mohr,* 76 Colo. 491, 233 Pac. 151.

In view of the foregoing authorities we think this case
must be determined upon the question of the sufficiency
of the evidence to sustain the general finding and judg-
ment of the trial court.

The general finding then was to the effect that plain-
tiff had complied with his contract or that defendant,
through its engineer, had accepted the work done when
the casing was set, the well cleaned out and drilled to a
depth of 816 feet, as full performance, and that plain-
tiff was entitled to recover the full contract price.   The
judgment was not rendered on the theory of a quantum
meruit notwithstanding the remarks of the court.   We
think the evidence is sufficient to sustain the judgment
and it should therefore be affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE DENISON and
MR. JUSTICE WHITFORD concur.