## No. 16,920.

### HOPKINS *v.* UNDERWOOD ET AL.
(247 P. [2d] 1000)

Decided August 25, 1952.   Rehearing denied September 29, 1952.

Mr. THOMAS K. HUDSON, for plaintiff in error.

Mr. C. Mert Reese, Mr. Burton Crager, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

The parties will be referred to by name.

Hopkins, as buyer, and Underwood, as seller, on December 5, 1950, entered into an agreement for the sale and purchase of one million shares of stock of the Sioux Oil Company, to be delivered and paid for in fifty thousand-share lots, at prices and on dates therein specified. The first delivery date was December 30, 1950, and the last delivery date June 30, 1951. The contract provided for delivery and payment *on or before* the dates mentioned therein and further provided "that time is of the essence of this Agreement but the Buyer shall have a period of five (5) days' grace to make payment on the dates provided herein, if it be necessary." The contract further provided that if the buyer failed to perform any of the provisions of the agreement, he was to pay the agreed sum of one thousand dollars to the seller as liquidated damages. It also was provided that upon the execution of the agreement, the seller would deliver to Harper M. Orahood, as escrow agent, twenty certificates, each for fifty thousand shares of the stock involved, endorsed in blank to be delivered according to the terms of the agreement.

On December 14 following, the seller, Underwood, desired an extension of the time provided in the agreement for performance, and in consideration of the delivery to Hopkins, the buyer, of fifty thousand shares of stock, a modification agreement was, on that date, executed, which, in effect, was an approximate six-months' extension of the time on the entire original agreement; in other words, the first due date was changed from "on

or before December 30, 1950," to *"on or about* June 30, 1951."

The record discloses that on December 14, 1950, prior to the execution of the modification agreement, both parties met in the office of Orahood, who was counsel for Underwood; that Hopkins was not represented by counsel at the time of the preparation of either of the two agreements; that a full, discussion was had concerning the matter of modification of the original agreement, and apparently, for some sufficient reason, the phrase "on or before" as contained in the original agreement, was discussed, and it was specifically agreed that in the modification agreement to be drawn, the phrase would be "on or about."

Around July 5, 1951, which would be five days beyond June 30, 1951, Hopkins requested an extension of time, and negotiations between the parties continued until July 9, when Underwood withdrew the stock from the escrow, and Hopkins contends that on that date he made an oral tender of the amount due; the facts surrounding that offer or proposal are somewhat nebulous and denied by Underwood, however, on July 16, Hopkins did cause a written tender, accompanied by a certified check for $5,500.00 to be made to Underwood and to the escrow holder, which tender was refused.

Alleging that this controversy had arisen, and that he was desirous of having the court determine the respective rights of the parties involved, Hopkins filed this action for declaratory judgment to that end. Trial was had to the court, and on January 15, 1952, judgment was entered in favor of defendant, Underwood, which judgment is the basis of this review.

For reversal, Hopkins specifies four points: (1) That the court erred in finding that plaintiff was required under the facts of the case as shown by the evidence to make a tender under the written·contracts. (2) That the court erred in its construction of the words "on or about." (3) That the court erred in construing the con-

tract other than it is written. (4) That the court erred in the admission of parol testimony.

If a determination of this case depended upon a resolution of the facts surrounding the controversy, it would be difficult, because the facts as to just what happened and what was said between the parties at or about the time performance was necessary is in violent dispute; however, the facts that are controlling, when considered in the application of correct rules and principles of law, are not in conflict. That is to say, that on or about July 5, 1951, when Hopkins requested, and offered to give consideration for, a short extension of time, and negotiations followed for two or three days, and without any specific hour or day being fixed by Underwood in which Hopkins was to comply before the stock would be taken from escrow, Underwood did, early in the morning of July 9, take the stock from escrow; and there is no dispute that on July 16, a tender by way of a certified check for the amount due was made. The real reason why this controversy is before us grows out of what, in our opinion, was an improper application or determination of the term "on or about" contained in the modification agreement. There is little use to detail the disputed testimony. However, it undisputably appears from the record that Hopkins, without benefit of counsel, at first was not fully aware of his rights under this term or phrase in the contract, and made some expression, on or about July 5, to the effect that he was in default and needed some more time. There is no dispute that later in the negotiations, he said he did not consider that the contract would be canceled on account of the time he might be allowed under this wording of contract. He said that on the date he talked with Underwood by long distance telephone concerning being allowed more time, that Underwood assured him not to worry about it, that he would return by Saturday, which would be July 7, and something might be worked out. It is not disputed that Underwood did return and negotiations consumed

228

all of Saturday afternoon and further by telephone on Sunday. Hopkins said that Underwood wanted different prices for the first stock than that mentioned in the contract, and further figured and discussed his needs to the end that he wanted about $14,000. The actual payment due was $5,500.00. Hopkins said that he told Underwood on the telephone on Sunday that money was available to him on Monday, the next day. Underwood said that he considered the contract canceled. However, in face of the uncertainty of a specific time for Hopkins to act, Underwood did not fix an hour or day within which Hopkins was to perform and failing to do so, the contract would be canceled and the stock withdrawn from escrow.

This contract, and the modification thereof, was Underwood's contract, and the modification drawn for his benefit after special attention between the parties and a discussion had as to changing the due dates "on or before" to "on or about;" however, when the approximate time came for performance, it was Underwood who finally declared what the term "on or about" meant in point of time for Hopkins and thereby controlled the transaction, leaving Hopkins at his mercy. It is illogically contended by Underwood here that time still is the essence of the contract, because, by their subsequent and specific agreement, the provision in the original contract of December 5, 1950, that "time is of the essence of the contract" was removed and destroyed by the modification. Technically, there could be doubt about the effect of this clause in the original contract as drawn, because that contract provided for payments "on or before" with an allowance of five days if necessary. As set up, this leaves room for conjecture. Where time is the essence of a contract, it means that the provision in the contract which fixes the time of performance is to be regarded as a vital term of the contract, the breach of which may operate, at the election of the party not in default, as a discharge of the contract. Performance at or within the time specified is essential before the right

to require counter performance. When the parties here intentionally and specifically changed the time of performance to "on or about," certainty as to time was left subject to circumstances and established a field for negotiation as to a reasonable time to be then fixed by the parties to the contract.

Under the circumstances here, if Underwood was of the opinion that the limit of time for performance was five days after June 30, it was the equivalent of reinstating the terms of the original contract without the consent or participation of Hopkins. If he was not following the five-day extra provision in the original contract and considered that five days from June 30 was reasonable time within which Hopkins was to perform under the term "on or about," then it was incumbent upon Underwood, in face of the change having been made by the modification of the agreement, to fix a positive date within which Hopkins was to comply, and then, finally, the question might be one for determination by the courts as to whether or not a reasonable time had been allowed under the provision of the term "on or about." The record reveals a total absence of such conduct on the part of Underwood. It does reveal that in the middle of negotiations, whether disputed or not, Underwood, without any notice or the fixing of a time, removed the stock from escrow, instantly defeating Hopkins' rights thereto. This situation was recognized by the trial court when the trial court stated, "A conference did take place about two days later, which lasted three or four hours, and again no extension of time was given. * * * " However, the trial court in construing the contract stated, "At the most, and construing it most favorably in plaintiff's behalf, it would allow a five-days' grace period provided by the contract on all payments, *and maybe, if the circumstances justified it, a day or two besides.* * * * " (Emphasis supplied.) It is apparent that the trial court picked up the five-day grace period of the original contract and carried it forward into the modi-

fication agreement, and when the trial court said, " * * * and maybe, if the circumstances justified it, a day or two besides," it clearly recognized that there was not a fixed time in the contract and no specific time had been fixed by the parties. There is just as much reason for the trial court to have said "ten or fifteen days" as to have said "maybe a day or two besides." Finally, it must not be overlooked that the provision concerning the time element of performance in the original contract of December 5 was not carried forward and left in effect by the modification agreement of December 14, because of the direct and specific discussion of the vital time element and removed and destroyed the phrase "time is of the essence" in the original contract.

It is Underwood's contention "that 'on or about' at the most meant within five days after the due date, June 30, 1951." If this is correct, then the modification meant nothing, because the original contract provided five days of grace after June 30 if necessary. It was useless for the parties to discuss the "on or before" phrase and change it to "on or about" if it meant only five days, after that had already been said. If we follow the interpretation applied by Underwood, he allowed only four days under the time element of "on or about" because he withdrew the stock on July 9. It is unmistakably clear that the original intention of the parties was that five days of grace was allowable. Regardless of the modification, this five days seemed to be carried forward by both parties, and, of course, the element of reasonable time under "on or about" would then apply. Following this conclusion no other fair construction of the contract could be had other than to say that the performance time would be June 30, 1951, plus five days, plus reasonable time allowed by "on or about."

Much argument is advanced by Underwood that no tender was made. This requires no discussion for the reason that this is not a suit for specific performance and is solely an action for a declaration of the rights of the

parties to the contract; and in addition, even the oral tender Hopkins claims to have made or arranged for, as well as the written tender, would be considered futile as requirements, because the stock had already been removed from the escrow, making it impossible to comply with or meet the terms of a tender. The question of tender is not the pivotal point involved for the reason that there is no contention that Hopkins was ready to perform and made a tender which was rejected. Hopkins was not conveniently ready to perform and was in the middle of negotiations which he says had been assured him for additional time when Underwood made it impossible for him to go forward with the contract as modified.

Defendant in error Underwood contends that the issue of tender was not raised by the pleadings. That is not fatal in this case, because this matter was considered in the trial without objection on anyone's part, therefore, it will here be treated in all respects the same as if it had been raised in the pleadings. Rule 15 (b), R.C.P. Colo.

In view of the discussion heretofore made, it is unnecessary to notice the other points specified.

It is obvious that the effect of the reversal of the judgment herein in defendant's favor leaves the parties in the same position with the same rights as of June 30, 1951, under the modified agreement.

It follows that the judgment entered by the trial court for $1,000 in favor of Underwood, growing out of the default of Hopkins, is erroneous and should be set aside.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment for plaintiff Hopkins according to the allegations and prayer of his complaint.

MR. JUSTICE ALTER dissents.