RAY L. ATCHISON CONSTRUCTION
COMPANY, Plaintiff-Appellee,

v.

Dwight A. SOSSAMAN and Grace Ann
Sossaman, Defendants-Appellants.

No. 83CA1003.

Colorado Court of Appeals,
Div. II.

Dec. 12, 1985.

Rehearing Denied Jan. 9, 1986.

Certiorari Denied (Sossaman)
April 7, 1986.

E.B. Hamilton, Jr., Durango, for plaintiff-appellee.

Richard N. Stuckey, Denver, for defendants-appellants.

STERNBERG, Judge.

Plaintiff, Atchison Construction Company (seller), brought this action alleging that defendants, Dwight A. and Grace Ann Sossaman (buyers), had defaulted on two promissory notes and a lease, all executed pursuant to the parties' agreement for purchase and sale of a breeding herd of registered Limousin cattle. Buyers counterclaimed, alleging breach of contract arising from breach of express and implied warranties, the tort of fraud, rightful revocation of acceptance and cancellation under the Uniform Commercial Code, and common law rescission based in fraud in the

inducement. The trial court entered judgment for seller and buyers appeal. We affirm.

Seller owned a ranch, together with ranching equipment, feed and breeding supplies, and a breeding herd of registered Limousin cattle. Early in 1980, seller was approached by buyers, also experienced cattle ranchers, who sought to purchase the herd with the objective of further improving its bloodlines and breeding quality.

In March 1980, the parties entered into a purchase and sale agreement covering 137 head of cattle and certain equipment and supplies. Buyers executed a promissory note in favor of seller, secured by a financing statement and a security agreement establishing seller's collateral in the herd. The parties also agreed to terms for a lease of the ranch.

Following the sale, buyers found errors in breeding records given them by seller. It was also discovered that the herd actually consisted of 146 cattle. In October 1980, the parties entered into an addendum to their agreement compensating for each of these errors. The addendum was supported by a second promissory note executed by buyers in favor of seller.

In December 1980, however, buyers contacted seller regarding questions as to the parentage of 65 recently born calves which had been *in utero* at the time of contracting. Buyers became convinced that comparison of birth dates of the calves with breeding exposure data from the breeding records showed that the calves had not been sired by purebred bulls and that improper practices had been used in breeding them. They concluded that the animals could not, therefore, be registered, thereby substantially impairing the value of the herd.

Further investigation persuaded them that the bloodlines of the entire herd had been contaminated and that seller had materially misrepresented its quality. As a result, buyers refused to make payments due under the notes and the lease and directed their attorney to write to seller revoking their acceptance of the herd.

Seller filed suit and buyers returned the herd, which seller subsequently resold. All but two or three of the animals alleged to be of doubtful parentage were accepted for registration.

## I.

The parties' agreement states that: "[S]eller makes no *claims* as to any offspring born after the date of this contract, nor are any offspring to be included under the security agreement." (emphasis supplied) During trial, seller argued that this language limited express warranties and negated the implied warranty of fitness for a particular purpose. Buyers argued that it referred only to the doctrine of accretion and seller's property interest in the expected calf crop. The trial court concluded that the provision, when read in the context of the entire agreement, was ambiguous. It therefore heard testimony by the parties in order to determine their intent as to the meaning of the word "claims." The trial court ruled in favor of seller.

■ If a contract is ambiguous in its terms, a trial court may properly admit extrinsic evidence to determine the intent of the parties as to the meaning of those terms. *Chambliss/Jenkins Associates v. Forster,* 650 P.2d 1315 (Colo.App.1982). However, a difference of opinion between parties to a contract regarding interpretation of its terms cannot of itself create an ambiguity. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978). The question whether an ambiguity exists is to be answered by an examination of the language of the document in which words are to be construed in harmony with their accepted meaning and with reference to all provisions of the document. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., supra; M.L.G. Corp. v. Davis,* 672 P.2d 1019 (Colo.App.1983).

Based on these rules, we agree with the trial court that the provision was ambiguous in the context of the entire agreement and conclude that the trial court properly admitted extrinsic evidence in order to ascertain the intent of the parties. Because a determination of intent is a finding

of fact, *see Beneficial Finance Co. v. Bach,* 665 P.2d 1034 (Colo.App.1983); *Chambliss/Jenkins Associates v. Forster, supra,* it may not be overturned on appeal absent clear error. *See Johnson v. Smith,* 675 P.2d 307 (Colo.1984). No such error was present here.

## II.

Buyers further argue, however, that, as a matter of law, words negating an implied warranty of fitness for a particular purpose, or limiting express warranties, must be clear, unequivocal, and the result of genuine agreement between the parties. Although this standard is clearly applicable to protect consumer buyers in transactions with merchant sellers, *see Cherokee Investment Co. v. Voiles,* 166 Colo. 270, 443 P.2d 727 (1978), we conclude that it is not applicable in the circumstances of this case.

When reviewing a judgment of a trial court sitting without a jury, we must search the record for evidence most favorable to that judgment, and, if supported by competent evidence in the record, it will not be disturbed. *See Adler v. Adler,* 167 Colo. 145, 445 P.2d 906 (1968).

Where, as here, both parties qualify as "merchants" under the Uniform Commercial Code, *see* § 4-2-104, C.R.S., and were represented by counsel, there is little reason to assume that a contract term unfavorable to one of them is the product of unequal bargaining power or superior drafting expertise. Further, there is evidence in the record to support the conclusion that the parties discussed the question of warranties on the calves: Seller's agent testified that he had told buyers that he could not guarantee the breeding of the calves until after their birth and that he believed that the above-quoted provision stated this reservation.

The trial court did not make findings specifically addressing the bargaining process; however, this point was addressed before the court by both parties. In this situation, we must presume that the trial court, in considering the intent of the parties regarding the meaning of the language in question, concluded that the disclaimer formed a part of this bargain. *See City of Alamosa v. Holbert,* 82 Colo. 582, 262 P. 87 (1927); *Davis v. Larson,* 76 Colo. 527, 233 P. 160 (1925).

## III.

Buyers next argue that the trial court erred in failing to apply the standard of "negligent disregard of the truth or falsity of statements made" to the fraud claims. However, this standard requires as a factual predicate the existence of misrepresentation or concealment of a material fact. The trial court here found that seller neither concealed nor misrepresented any facts material to the transaction. These are findings of fact binding on appeal if supported by the record and not clearly erroneous. *See Johnson v. Smith, supra; Varady v. White,* 42 Colo.App. 389, 595 P.2d 272 (1979). We find no error.

Buyers' other contentions are without merit.

The judgment is affirmed.

SMITH and VAN CISE, JJ., concur.