**R.M. JOHNSON, and Lindsey A. Johnson, Plaintiffs-Appellees,**

**v.**

**James J. BENSON, and Carl E. Benson, Defendants-Appellants.**

**No. 84CA0619.**

Colorado Court of Appeals, Div. II.

March 13, 1986.

As Modified on Denial of Rehearing April 17, 1986.

Certiorari Denied Sept. 2, 1986.

Garfield & Hecht, P.C., Clifton D. Burdick, Jeremy M. Bernstein, Aspen, for plaintiffs-appellees.

Thomas T. Crumpacker, Aspen, for defendants-appellants.

STERNBERG, Judge.

Defendants, James L. and Carl E. Benson (sellers), appeal from a judgment awarding plaintiffs, R.M. and Lindsey A. Johnson (buyers), restitution of money paid under a receipt and option contract. We affirm.

In August 1981, the parties executed a contract whereby buyers agreed to purchase a house to be constructed by sellers in the Aspen area. Contract provisions pertinent to this appeal state:

> "Closing shall take place thirty-two (32) days after the issuance of the Certificate of Occupancy for the subject premises but in no event any earlier than February 15, 1982, nor any later than March 15, 1982.

. . . .

The hour and place of closing shall be as designated by sellers.

. . . .

Time is of the essence hereof. . . ."

The agreement specified a payment schedule. It also provided remedies: Upon buyers' failure to make or tender payment or to perform "any other condition," sellers could terminate the contract and keep all payments as liquidated damages; if sellers failed to perform any condition provided in the contract, buyers were given an election to rescind or proceed against sellers for specific performance and damages. Buyers made all payments as required by the agreement, totaling $110,000 at the time of the parties' controversy.

As the period agreed upon for closing approached, buyers indicated that they would prefer a later date. The parties negotiated this point, but no agreement to modify the contract was reached. Sellers, however, understood that buyers had agreed to a March 15, 1982, closing and told their attorney to write to buyers requesting their signatures formalizing certain amendments to the contract. The resulting letter put forth the proposed extension of closing, stated the attorney's understanding that a Certificate of Occupancy had been obtained for the property, and proposed deletion of the 32-day language quoted above. Buyers did not sign the proposed amendments.

As February 15 approached, sellers' attorney became concerned at buyers' lack of response and urged buyers by telephone that if no agreement regarding extension of closing was forthcoming, sellers would hold them to a closing on February 15 in order to protect sellers' rights with respect to a claim of waiver of the "time is of the essence" clause of the contract. After further negotiation and discussion, sellers formally notified buyers by wire dated February 11 that closing would occur on February 15.

Buyers did not appear at the place and time designated by sellers. Consequently, on February 15, sellers' attorney sent to buyers the following telegram:

"You have failed to close pursuant to your receipt and option contract with Carl and Jim Benson dated August 18, 1981. Your contract is therefore null and void and all payments made by you will be retained by the Bensons as liquidated damages pursuant to [its terms]."

On February 17, plaintiff R.M. Johnson traveled from his home in Houston to Aspen, engaged counsel, and returned home. On February 21, sellers contacted buyers by telephone and assured them that they wanted to perform the contract. On February 22, buyers' attorney filed this action seeking damages or specific performance. It is uncontroverted that as of February 15 only a temporary Certificate of Occupancy had been approved for the house.

After a bench trial, the court found, *inter alia*, that: "[T]aken as a whole, the contract required substantial completion of the residence [and] [t]he procuring of a Certificate of Occupancy for the benefit of both parties 32 days prior to closing." It further found that buyers had no obligation to be present for a February 15 closing, and that sellers' February 15 telegram constituted an anticipatory repudiation of the contract which was acted upon by buyers, thus preventing timely retraction. These findings were adopted without change from proposed findings submitted by buyers. The trial court then concluded that, as sellers had "failed to perform conditions and obligations on their part to be performed, [and] failed to complete construction of the house prior to the last date for closing specified in the contract," buyers' performance was excused, and they were entitled to restitution of all payments made under the contract.

## I.

■ Sellers contend that the trial court's findings and conclusions are inadequate under C.R.C.P. 52(a) to support its judgment. They assert that critical issues were not addressed therein, including the questions

whether substantial completion and the obtaining of a Certificate of Occupancy were conditions precedent to buyers' duty to close as directed by sellers and, if so, whether these conditions had been performed or waived. We disagree.

Where a trial court adopts findings proposed by a party, a reviewing court should carefully examine them in light of the whole record. *See Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo.1982). An appellate court:

> "will assume that the trial judge examined the proposed findings and agreed that they correctly stated the facts as he himself found them to be.... It is only when the findings themselves are inadequate and do not indicate the basis for the trial court's decision that the judgment will be reversed."

*Uptime Corp v. Colorado Research Corp.*, 161 Colo. 87, 420 P.2d 232 (1966). Under C.R.C.P. 52(a) " '[t]he ultimate test as to the propriety of the findings is whether they are sufficiently comprehensive to provide a basis for decision and [are] supported in the evidence.' " *Mowry v. Jackson*, 140 Colo. 197, 343 P.2d 833 (1959). This standard is met when "the ultimate facts have been determined and conclusions of law are entered thereon." *Manor Vail Condominium Ass'n v. Town of Vail*, 199 Colo. 62, 604 P.2d 1168 (1980).

The ultimate questions of fact before the court were: (1) whether buyers were obligated to close on February 15; (2) if not, whether sellers' February 15 telegram constituted an anticipatory breach; and (3) if so, whether buyers relied upon the repudiation so as to preclude its retraction by sellers. The trial court expressly resolved these issues.

We conclude that the findings of the trial court provide a sound basis for its judgment. *See Zimmerman v. Hinderlider*, 112 Colo. 277, 148 P.2d 813 (1944) (on appeal, all presumptions are in favor of the trial court's findings and judgment); *City of Alamosa v. Holbert*, 82 Colo. 582, 262 P. 87 (1927) (general findings create presumption that trial court found all facts necessary to sustain a judgment).

## II.

Sellers next contend that the trial court erred in finding that substantial completion of the residence and procurement of a final Certificate of Occupancy were conditions precedent to buyers' duty to close. We disagree.

Interpretation of a contract is a question of law. A reviewing court is not bound by a trial court's conclusions relating thereto. *See Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984). An integrated contract should be construed so as to effectuate the intention of the parties and should be "interpret[ed] ... in its entirety with the end in view of seeking to harmonize and give effect to all provisions so that none will be rendered meaningless." *Pepcol Manufacturing Co., supra.*

A contract provision may be interpreted as a condition precedent where it speaks to the dominant purpose of the contract, "go[ing] to the root of the contract so that a failure to perform it would render performance of the rest of the agreement ... a thing different in substance from what the [party protected by the condition] had agreed to...." *Charles Ilfeld Co. v. Taylor*, 156 Colo. 204, 397 P.2d 748 (1964). The parties' intent to create a condition must appear expressly or by clear implication. *Charles Ilfeld Co. v. Taylor, supra.*

"Where time is of the essence of a contract, it means that the provision of the contract which fixes the time of performance is to be regarded as a vital term of the contract.... Performance at or within the time specified is essential before the right to require counter performance [arises]." *Hopkins v. Underwood*, 126 Colo. 224, 247 P.2d 1000 (1952).

■ Here, the contract expressly states that time is of the essence in its performance. Closing was to occur within the specific 29-day period from February 15 to March 15, 32 days after the Certificate of

Occupancy had been procured. There was credible evidence that buyers' entire purpose in purchasing the house was to speculate in the Aspen real estate market: When a property is to be purchased at a fixed price, the possibility of adverse market fluctuations provides a reasonable basis for a requirement that closing occur at a particular time. It is also reasonable, and supported by the evidence here, that buyers intending to resell for profit would seek to enter the market with a marketable property and that they would require evidence of competent workmanship in the form of building inspections leading to a final Certificate of Occupancy. Moreover, the plain language of the 32-day requirement anticipates at a minimum that such a certificate be obtained sometime before a closing.

We conclude that sellers had agreed to provide buyers with a house that had passed all building inspections required for issuance of a final Certificate of Occupancy. The contract, read as a whole in light of the intentions of the parties, makes issuance of such a certificate a condition precedent to buyers' duty to close. Under this analysis we need not consider whether the contract imposes a condition that sellers achieve some standard of completion beyond that represented by a Certificate of Occupancy.

■ Inasmuch as no final Certificate of Occupancy had been obtained, the trial court did not err in finding that buyers were under no obligation to appear at the February 15 closing announced by sellers.

### III.

Sellers next assert that the trial court erred in finding that the February 15 telegram constituted an anticipatory repudiation of the contract which was validly relied upon by buyers so as to preclude its retraction by sellers. Again, we do not agree.

"In order to constitute an anticipatory breach of contract there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arises." 4 A. Corbin, *Contracts* § 973 (1951). *See also* Restatement (Second) of Contracts § 250 comment b (1981); *Meinhardt v. Investment Builders Property Co.*, 518 P.2d 1376 (Colo.App.1973) (not selected for official publication).

■ A repudiation may be retracted when the repudiator notifies the injured party that he will proceed with his performance. A retraction is ineffective, however, when the injured party has materially changed his position in reliance on the repudiation or notified the repudiator that he considers a repudiation to be final. The filing of a lawsuit based on repudiation is generally held to constitute a material change of position. *See* A. Corbin, *supra* § 980; Restatement (Second) of Contracts § 256 comment c (1981). The determinations whether anticipatory repudiation or retraction have occurred are ordinarily questions of fact. *See, e.g., Battista v. Lebanon Trotting Association*, 538 F.2d 111 (6th Cir.1976); *Palmiero v. Spada Distributing Co.*, 217 F.2d 561 (9th Cir.1954).

■ Sellers argue that because buyers had stated that they did not want to close as provided by the contract, had tried to negotiate a later closing, and had failed to appear at the February 15 closing, sellers' February 15 telegram was not a repudiation but "an expression by [sellers] of an intent not to perform further because the [buyers] would not perform." The blunt and unequivocal language of the telegram, however, conveys a definite intention to terminate the parties' agreement, and we agree with the trial court that this language worked a repudiation as of February 15. We conclude that the trial court's findings that a repudiation occurred and that sellers unsuccessfully attempted to retract it are amply supported by the record and may not be disturbed on review. *See Page v. Clark, supra.*

### IV.

■ Finally, sellers argue that the trial court erred in dismissing their counter-

claims for abuse of process and slander of title. We disagree.

These claims rested on the allegation that even though buyers had claimed a right to specific performance, they had no intention of seeking title and used the *lis pendens* solely as a form of security for the money they had paid sellers. However, proof of damages is an essential element of both counterclaims. *See Aztec Sound v. Western States,* 32 Colo.App. 248, 510 P.2d 897 (1973) (abuse of process); *Fountain v. Mojo,* 687 P.2d 496 (Colo.App.1984) (slander of title).

There was no evidence that any actual sale had been frustrated by the *lis pendens,* no evidence of the identity of persons failing to purchase nor any explanation why it was not possible to name them, no evidence of costs incurred in seeking to remove the *lis pendens,* and no evidence from which the court could infer that market conditions in the year here in question were similar to those in previous years so as to base any award analogous to recovery of lost profits in breach of contract. *Cf.* W. Prosser, *Torts* § 128 (W. Keeton 5th ed.1984). We conclude that sellers failed to prove damages under their counterclaims and that the trial court did not err in dismissing them.

We have considered other issues raised by the parties, and we find that they are either without merit or are disposed of by the foregoing analysis.

Accordingly, the judgment is affirmed.

SMITH and BABCOCK, JJ., concur.