**WELLS FARGO BUSINESS CREDIT, Plaintiff,**

v.

**AMERICAN BANK OF COMMERCE, Defendant and Third-Party Plaintiff/Appellee,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Third-Party Defendant/Appellant.**

No. 84–1577.

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1985.

Harris L. Hartz, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, N.M., for defendant and third-party plaintiff/appellee.

Robert H. Clark, Keleher & McLeod, P.A., Albuquerque, N.M. (Peter H. Johnstone and Richard L. Alvidrez, Keleher & McLeod, P.A., Albuquerque, N.M., with him on the brief), for third-party defendant/appellant.

Before HOLLOWAY, Chief Judge, and BREITENSTEIN * and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of New Mexico. The court below concluded that Employers Insurance of Wausau was liable to the American Bank of Commerce on a "Bankers' Special Bond" in the amount of $233,000. The insurance company appeals. We affirm in part but find that the case must be remanded for further proceedings.

This case arose out of a series of transactions among the Snow Mountain Lumber Company ("Snow Mountain"), the American Bank of Commerce ("ABC"), and Wells Fargo Business Credit Corporation ("Wells Fargo"). Employers Insurance of Wausau ("Employers") is ABC's insurer.

Wells Fargo was shown to have made loans to Snow Mountain in exchange for a security interest in Snow Mountain's accounts receivable. The loan agreement provided that when Snow Mountain invoiced a customer it would forward a copy of the invoice to Wells Fargo. Wells Fargo would then lend Snow Mountain 85% of the amount invoiced. The loan agreement provided that when Snow Mountain collected on its invoices it would deposit the funds in a special account (the "agency account") at ABC. Under the terms of an agreement to which Wells Fargo, Snow Mountain, and ABC were parties (the "special deposit agreement"), funds deposited in that account were to be paid to the order of Wells Fargo at the close of every business day. Wells Fargo held a security interest in the funds deposited in the account.

Difficulties appeared when Snow Mountain began to experience financial problems in 1981. During the fourth quarter of that year Snow Mountain transferred $189,348.93 from the agency account to its own operating account. Snow Mountain's financial legerdemain was insufficient to free it from its financial troubles.

Snow Mountain filed a voluntary petition for bankruptcy on June 15, 1982. Following the filing of the petition for bankruptcy, Snow Mountain transferred an additional $224,848.10 from its agency account to its operating account.

Wells Fargo became aware of Snow Mountain's violation of the terms of the special deposit agreement in June of 1982. Later that month Wells Fargo sent ABC a copy of the special deposit agreement and notified ABC of a potential claim based on ABC's duties as a party to the special deposit agreement. Wells Fargo sent a formal demand letter to ABC on July 8, 1982, claiming damages as a result of a claimed breach of ABC's duties under the special deposit agreement. ABC notified Employers of this potential claim on October 1, 1982.

Wells Fargo filed suit against ABC in the United States District Court for the District of New Mexico on December 30, 1982. ABC impleaded Employers as a third-party defendant on July 19, 1983. Trial was carried out on January 9, 1984 before Judge Juan Burciaga. The plaintiff Wells Fargo announced that it had reached a settlement

* Judge Breitenstein heard oral arguments of the appeal but because of his illness did not participate in this decision.

with defendant ABC; thus, only the third-party claim remained to be tried.

ABC's claim against Employers was based on a Bankers' Special Bond issued by Employers. ABC claimed that the loss caused by Snow Mountain's actions, for which ABC had settled with Wells Fargo, was within the "On Premises" coverage of the bond. The "On Premises" coverage insured ABC against losses resulting from false pretenses, larceny, theft, and embezzlement. Employers defended that ABC could not collect under the bond because no covered loss had taken place, the notice of loss from ABC to Employers was untimely, and the loss was excluded from coverage by the bond's explicit exclusions.

After a trial without a jury, Judge Burciaga held for ABC in all respects. He entered a judgment against Employers for $233,000, plus litigation expenses in both ABC's action against Employers and a related action against ABC then pending in bankruptcy court.

Employers appeals, raising as error the district court's conclusions with respect to false pretenses, larceny, theft, embezzlement, timeliness of notice of loss, and the applicability of the bond's exclusions. These conclusions cleared any fog which had covered the case.

Employers' first argument is that the transfers of funds between Snow Mountain's agency account and its general operating account were not the result of larceny, theft or false pretenses. The district court rejected Employers' argument and concluded that Snow Mountain's conduct in persuading ABC to make the transfers in question constituted larceny, theft and false pretenses under New Mexico law.

■ At the outset, we note that it is our policy "to accord extraordinary force on appeal to the '... views and findings of a federal district judge ... involving the interpretation and application of the law of the state of the federal trial judge's residence ... where there are no decisions on point or none which provide clear precedent.'" *Williams v. West Jordan City*, 714 F.2d 1017, 1020 (10th Cir.1983), quoting *Joyce v. Davis*, 539 F.2d 1262, 1264–65 (10th Cir.1976) (citations omitted). When we review the district court's decision with the appropriate degree of deference we find ourselves in agreement with the lower court's conclusion that the funds transfers from the agency account to Snow Mountain's operating account were the result of conduct on Snow Mountain's part constituting larceny, theft and false pretenses under New Mexico law.[1] Accordingly, we affirm the district court's decision that ABC's liability to Wells Fargo constituted a loss covered by the "On Premises" portion of the Bankers' Special Bond.[2]

Employers' next argument is that ABC failed to comply with the Bond's requirement that it promptly notify Employers of any losses covered by the policy, and that

---

**1.** We note that N.M.Stat.Ann. § 30–16–18, contained in the "Larceny" article of the New Mexico criminal code, makes it illegal improperly to remove or dispose of property subject to a security interest. The district court did not expressly rely on this statute in holding that Snow Mountain's conduct constituted larceny; we find, however, that the statute provides substantial support for the district court's conclusion of law on this point.

We also observe that the district court found that Snow Mountain held the funds in the agency account as trustee for Wells Fargo. Although there is no New Mexico law on point, we note that in other jurisdictions misappropriation of funds held in trust constitutes either theft, *see* S.D.Comp.Laws § 22–30A–10, or larceny, *see United States v. Gay*, 410 F.2d 1036, 1039 (D.C. Cir.1969); *St. Lawrence County Nat'l. Bank v.*

*American Motorists Ins. Co.*, 21 A.D.2d 702, 249 N.Y.S.2d 543 (1964). We believe that this provides additional support for the lower court's conclusion that ABC's loss resulted from conduct covered by the Bankers' Special Bond.

**2.** We do not mean to imply that ABC's handling of the transfers in question was without flaws. The record shows that ABC's handling of the Special Deposit Agreement and of Snow Mountain's transfers between the agency account and its operating account was quite slipshod. Nevertheless, since the "On Premises" coverage in the Bankers' Special Bond provides that losses due to larceny, theft or false pretenses are covered regardless of whether ABC's conduct in connection with such losses was negligent, we must find that ABC is entitled to recovery under the bond.

therefore ABC should not recover under the bond. We find this argument to be without merit.

▇ In New Mexico, "substantial compliance" with the notice and proof of loss requirements of an insurance policy is all that is required for an insured to collect under the policy. *Robinson v. Palatin Insurance Co.*, 11 N.M. 162, 66 P. 535, 536 (1901). The facts of this case reveal that ABC did substantially comply with the notice requirements of the policy.

ABC first realized that it might be liable to Wells Fargo for improper transfers from Snow Mountain's agency account in the summer of 1982. ABC referred the matter to Peter Brouillire, general counsel for the bank's parent holding company, in August, 1982. Mr. Brouillire and the holding company's accountants immediately investigated the matter. The accountants filed a report on September 30, 1982, indicating that there had been substantial transfers from the agency account that might make ABC liable to Wells Fargo for mishandling the account. On October 1, 1982—the day after the report confirmed ABC's potential liability to Wells Fargo—ABC filed a notice of loss with Employers. We agree with the district court that ABC's conduct, as outlined above, constituted substantial compliance with the notice requirements of the Bankers' Special Bond.

Employers also contends that ABC failed to comply with the bond's requirement that ABC provide Employers with "full particulars" of an alleged loss within six months of the time ABC discovered the loss. Once again, we disagree.

▇ ABC could not know the "full particulars" of the loss in this case until the existence and amount of its liability to Wells Fargo had been finally settled. Thus, the "full particulars" of the loss became known to ABC when it settled Wells Fargo's claim against it on the eve of the trial. Since ABC and Employers immedi-

ately thereafter went to trial on the insurance claims involved in this case, we find it difficult to see how Employers can contend that it was not aware of the "full particulars" of ABC's loss until more than six months after ABC knew of them. Accordingly, we affirm the district court's conclusion that ABC complied with the proof of loss requirements of the Bankers' Special Bond.

Employers' third argument is that the loss occasioned by Snow Mountain's transfers from the agency account to the operating account was excluded from the bond's coverage. The bond excludes:

Loss resulting from payments made or withdrawals from a depositor's account involving funds erroneously credited to such account ...

Employers argues that the transfers from the agency account were "erroneously" credited to the operating account because ABC had agreed not to allow Snow Mountain to make such transfers.

▇ The trial court was of the opinion that the exclusion had no application to the claim of ABC under the bond. Both parties agree that there are no cases interpreting this language. From this we are moved to conclude that under the proper standard of deference to the district judge's determination of the law of the jurisdiction where he sits, *see Williams*, 714 F.2d at 1020, the trial court's ruling on this issue must be affirmed.[3]

▇ Despite our affirmance of the district court's rulings on all issues of law presented, we must remand this case to the district court for a re-examination of the judgment ordered. The district court, in its findings of fact, found that ABC had settled with Wells Fargo for $230,000, yet the judgment awards ABC $233,000. This judgment casts shadows on the conclusion. If this is a typographical error, it should be corrected. If not, the evidence leading to

---

**3.** Indeed, because we have concluded that the district court's conclusion as to false pretenses, larceny and theft was correct, Employers' argument that the transfer of funds was "erroneous"

breaks down. The transfers were the result of dishonesty and not mere error, so the exclusion by its own terms cannot apply.

this conclusion should be explained. Also, it appears that the bond contains a $25,000 deductible in the "On Premises" coverage, and a $25,000 deductible in the litigation expenses coverage. These deductibles were not mentioned in the court's findings of fact or conclusions of law. Hence they must be considered in determining the amount of ABC's award, else ABC's recovery from its insurer will be more than it contracted for.

The cause is remanded for further proceedings consistent with this opinion.