FILED
United States Court of Appeals
Tenth Circuit

November 1, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of New
Frontier Bank, Greeley, Colorado,

      Plaintiff - Appellant,

v.

KANSAS BANKERS SURETY
COMPANY,

      Defendant - Appellee.

No. 15-1390

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:13-CV-02344-WJM-MJW)**

---

Joseph Brooks, Counsel (Colleen J. Boles, Assistant General Counsel, and Kathryn R.
Norcross, Senior Counsel of Federal Deposit Insurance Corporation, with him on the
briefs), Arlington, Virginia, for Plaintiff - Appellant.

John R. Mann (Heather K. Kelly, with him on the brief) of Gordon & Rees, L.L.P,
Denver, Colorado, for Defendant - Appellee.

---

Before **KELLY**, **McKAY**, and **McHUGH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Plaintiff-Appellant Federal Deposit Insurance Corporation (FDIC) sought to

recover on a financial institution crime bond and appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Kansas Bankers Surety Co. (KBS), FDIC v. Kansas Banker Surety Co., 105 F. Supp. 3d 1234 (D. Colo. 2015), and its subsequent denial of reconsideration, FDIC v. Kansas Bankers Surety Co., No. 13-cv-2344-WJM-MJW, 2015 WL 4882496 (D. Colo. Aug. 17, 2015). The district court held that the underlying bank, the New Frontier Bank of Greeley, Colorado, (Bank) had failed to submit a timely and complete proof of loss, thereby barring FDIC's recovery on the bond. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

In January 2009, one of the Bank's clients, Johnson Dairy and its principal, filed for bankruptcy. In February 2009, an attorney for the Bank provided KBS with notice of a potential claim arising out of that relationship. Specifically, the Bank's attorney furnished a letter in which Johnson Dairy complained of various improprieties in connection with the Bank lending $50 million to Johnson Dairy, including requiring cattle-lease agreements, breaching loan agreements, and not funding Johnson Dairy's working capital arrangements. 2 Aplt. App. 240–43. The FDIC maintains that Johnson Dairy, in concert with one of the Bank's loan officers participated in an unlawful scheme to circumvent the Bank's lending limits; ultimately, the loan officer would plead guilty and was sentenced to thirty months' imprisonment. The same day that the Bank provided KBS notice of the claim, KBS sent a reply letter, asking the Bank to inform KBS

- 2 -

promptly if the Bank had reason to believe the allegations were accurate or that wrongful acts had occurred.

Thereafter, Johnson Dairy filed an adversary proceeding against the Bank, its loan officer, and others, alleging that the Bank's loans and the conduct of its loan officer were coercive and intended to benefit the Bank at Johnson Dairy's expense. The Bank's general counsel then forwarded a copy of the complaint to KBS and requested coverage under the bond.

On March 30, 2009, KBS elected not to defend the Bank, thereby triggering a provision within General Agreement F of the bond that extended the Bank's normal deadline to submit a complete proof of loss from six months from discovery to six months from settlement or the entry of judgment in the adversary proceeding. As the Bank's position grew increasingly precarious, on April 2, 2009, KBS encouraged the Bank to meet the proof-of-loss requirements before takeover by any receiver. In so doing, KBS referred to Condition 14 of the bond, which provides, in pertinent part:

> This bond terminates as an entirety upon occurrence of any of the following:
> . . . .
> (c) immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials . . .
> . . . .
> After termination or cancellation, no . . . Federal official . . . acting in the capacity of . . . receiver . . . shall have or exercise any right to make any claim against [KBS], unless a Proof of Loss, duly sworn to, with full particulars and complete documentation has been received by [KBS] prior to the

termination or cancellation of this bond.

1 Aplt. App. 52. On April 10, 2009, the Colorado State Banking Commissioner closed the Bank and appointed the FDIC as receiver. The FDIC then settled the adversary proceeding, though it did not recover the entire amount the Bank had loaned to Johnson Dairy. The FDIC sought the difference between the amount recovered and the full amount as a "loss" under the bond. KBS, however, refused to pay the difference, stating that it had not received a proof of loss before the FDIC's appointment as receiver. The FDIC then filed suit against KBS.

The district court held that Condition 14 controlled over General Agreement F; thus, the Bank needed to submit a proof of loss, duly sworn, with full particulars and complete documentation prior to takeover by the FDIC. The district court found that the Bank had failed to comply with these requirements and further held that its interpretation of Condition 14 did not violate public policy.

Discussion

On appeal, the FDIC raises three main contentions. First, the FDIC argues that the district court erred in holding that Condition 14 controlled over General Agreement F, because Condition 14 is ambiguous and contains non-standard fidelity bond language that should be construed against the drafter, KBS, in favor of coverage. Aplt. Br. at 3, 29–38. Second, even if Condition 14 controls, the FDIC contends that Colorado law only requires "substantial compliance" with proof-of-loss requirements and that the Bank,

- 4 -

indeed, substantially complied with such requirements. Id. at 3–4, 38–44. Third, the FDIC argues that the district court's interpretation of Condition 14 violates public policy. Id. at 4, 44–50. The FDIC's arguments pertaining to non-standard fidelity bond language and substantial compliance are forfeited, and the FDIC's argument regarding public policy is without merit.

A. Non-Standard Language and Substantial Compliance

The parties dispute whether the FDIC raised its arguments regarding non-standard bond language requiring a different outcome and substantial compliance with the proof-of-loss provision before the district court. Compare Aplt. Reply Br. at 5–12, 20–21, with Aplee. Br. at 20–21, 36–38. Because failure to raise an argument before the district court typically results in forfeiture of that argument on appeal, see, e.g., United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007), we must first address whether the FDIC raised its arguments below.

For several reasons, the FDIC argues that it has not forfeited its first argument. Specifically, the FDIC states that it raised this issue in its opposition to KBS's motion for summary judgment, Aplt. Br. at 6, and argued generally that ambiguous provisions must be construed against the drafter. Aplt. Reply Br. at 6–7. The FDIC further argues that because KBS argued in favor of an exception to the general rule, the burden fell on KBS to establish that the language of the bond was standard. Id. at 7 (citing Metro Fed. Credit Union v. Fed. Ins. Co., 607 F. Supp. 2d 870, 874 n.1 (N.D. Ill. 2009)). The FDIC also states that KBS's lack of assistance in resolving the bond language issue militates against

forfeiture. Id. at 10. Alternatively, even if the argument was not preserved, the FDIC argues that exception to the general rule of forfeiture applies, namely that arguments involving a pure matter of law for which the proper resolution is certain should still be heard, and also contends that it has satisfied the plain-error standard to avoid forfeiture. Id. at 9–11.

Our review of the record leads us to conclude that the FDIC has forfeited its argument regarding non-standard language. As the district court stated in its order denying reconsideration, the FDIC never previously presented the court with the argument that the proof-of-loss provision was ambiguous. FDIC, 2015 WL 4882496, at *3, *4 n.4. Because the FDIC's argument regarding non-standard language hinges on a determination that the proof-of-loss provision is ambiguous, see Aplt. Br. at 29–34, it follows that this argument is new on appeal. Simply put, the FDIC did not argue below that the bond contained non-standard or unique language that was unilaterally added by KBS. On appeal, the FDIC refers us to its brief in opposition to KBS's motion for summary judgment, in which the FDIC argued that any ambiguity in the language of Condition 14 should be resolved in its favor. Id. at 34; Aplt. Reply Br. at 5–6 & n.11. But this is a far cry from arguing that one provision of the bond contains unique, non-standard language and therefore should be construed in favor of coverage. Indeed, nowhere in its opposition to summary judgment, or even in its motion for reconsideration, did the FDIC cite the principal cases upon which it now relies, namely First National Bank of Manitowoc v. Cincinnati Insurance Co., 485 F.3d 971 (7th Cir. 2007), and Metro

Federal Credit Union, 607 F. Supp. 2d at 874 n.1.

The FDIC's references (on appeal) to the district court's order granting summary judgment, see Aplt. Br. at 6 & n.12, 29–32, 34 & n.116; Aplt. Reply Br. at 6 n.11, further demonstrate that the district court was never fairly presented with this issue. There is simply no discussion of "unique" or "non-standard" language. Moreover, although the district court provided a general discussion about the construction of ambiguous provisions, it is clear from the district court's discussion of Condition 14 vs. General Agreement F that the court did not arrive at the proper interpretation of the bond based on ambiguity. See FDIC, 105 F. Supp. 3d at 1243–45; see also FDIC, 2015 WL 4882496, at *3 n.2 (explaining that the court did not find that Condition 14 was ambiguous). The excerpts of the district court decision the FDIC now relies upon, when viewed in context, simply do not show that the district court ruled on the issue the FDIC now raises.

The FDIC's argument that KBS had the burden of establishing whether the bond contained standard or non-standard bond language will not excuse its forfeiture. To the extent Metro Federal Credit Union suggests that a party advocating for an exception to the general rule of construing language against the drafter bears the burden of differentiating between standard and non-standard bond language under Illinois law (and we are not so sure it does), see 607 F. Supp. 2d at 874 n.1, we are not bound by a decision of the Northern District of Illinois, nor do we find it persuasive. Absent clear authority from this circuit or the Colorado courts, KBS was not required to demonstrate that the bond contains only standard language, otherwise all language would be construed against

it. As the district court noted, KBS argued in favor of the exception to the general rule of construing ambiguous provisions against the drafter in its motion for summary judgment, and the FDIC raised counter-arguments in response. FDIC, 2015 WL 4882496, at *4 n.4. Thus, the FDIC had ample opportunity to present its non-standard language argument then, as it directly pertains to KBS's argument, but the FDIC failed to do so.

We are not persuaded by the FDIC's argument that this court should nevertheless hear its argument because it is a question of law and the proper resolution of the issue is certain. See Singleton v. Wulff, 428 U.S. 106, 121 (1976); United States v. Gould, 672 F.3d 930, 938 (10th Cir. 2012). Neither factor here is met. The FDIC's argument is that "ambiguities must be construed to provide coverage . . . where, as here, an insurer adds unique language to a standard bond form." Aplt. Br. at 29. This is not a pure issue of law, because whether KBS unilaterally added unique language to the bond is a question of fact, and one that was not presented to the district court. See FDIC, 105 F. Supp. 3d at 1241–42 (characterizing the bond as "a heavily negotiated agreement between sophisticated parties"). While the FDIC did assert in its motion for reconsideration that Condition 14 was not negotiated between the parties, see 1 Aplt. App. 130 & n.4, the argument was made too late, and the district court was well within its discretion not to address it. See FDIC, 2015 WL 4882496, at *4 & n.4; see also Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Additionally, the proper resolution of the issue is not certain. Neither the Supreme Court, nor this court, nor the Colorado courts have addressed whether non-standard bond language must be construed against the

drafter.  The FDIC's reliance on non-binding authority from the Seventh Circuit and the Northern District of Illinois, see Aplt. Reply Br. at 10 & n.21 (citing First Nat'l Bank of Manitowoc, 485 F.3d at 977, 979 n.8; Metro Fed. Credit Union, 607 F. Supp. 2d at 874 n.1), cannot overcome this hurdle.  And while Hoang v. Assurance Co. of America, 149 P.3d 798, 802 (Colo. 2007), does indicate that Colorado courts will construe in favor of coverage an ambiguity in a homeowner's insurance policy offered on a take-it-or-leave-it basis, it is not clear that the Colorado courts would extend this holding to banks, nor is it clear that the provisions at issue here were imposed on a "take-it-or-leave-it" basis, as discussed above.

This same analysis demonstrates why the FDIC's plain-error argument also fails. Generally, a forfeited argument will serve as the basis for reversal in a civil matter only if the district court's judgment was plainly erroneous.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011).  In civil cases, the burden of establishing plain error lies with the appellant and is "'nearly insurmountable.'"  Somerlott v. Cherokee Nation Distribs., Inc., 686 F.3d 1144, 1151 (10th Cir. 2012) (quoting Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802 (10th Cir. 2001)).  "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." Richison, 634 F. 3d at 1128; see also United States v. Olano, 507 U.S. 725, 732–37 (1993) (discussing the plain-error standard for appellate review in a criminal case).  To be plain, the error must be clear or obvious under current, well-settled law of either the

Supreme Court or this court. United States v. DeChristopher, 695 F.3d 1082, 1091 (10th Cir. 2012). Assuming it is not too late to argue for plain error in a reply brief, see Aplt. Reply Br. at 11, we do not find that the FDIC has met its burden to show an error that is clear or obvious under current, well-settled law issued by the Supreme Court or this court, or that the district court's decision is clearly erroneous under Colorado law.

As to its substantial compliance argument, the FDIC provides three bases for contending that it raised the argument before the district court. First, the FDIC argues that it raised the issue in its opposition to KBS's motion for summary judgment. Aplt. Br. at 7. The FDIC asserts that it argued that proof-of-loss requirements must be "construed reasonably," and that "the substantial compliance standard and the reasonable construction rule are two sides of the same coin." Aplt. Reply Br. at 21. Second, the FDIC argues that it raised the issue in its motion for reconsideration. Aplt. Br. at 7. The FDIC relies on the district court's order denying the FDIC's motion for reconsideration, in which the district court noted that the FDIC used the phrase "substantially complied" in its briefing. See Aplt. Reply Br. at 20 (quoting FDIC, 2015 WL 4882496, at *3). According to the FDIC, this demonstrates that the district court understood the FDIC to have made its substantial compliance argument. Id. Third, the FDIC asserts that its argument should not be forfeited because the substantial compliance issue involves a pure matter of law for which the proper resolution is certain. Id. at 21. The FDIC's contentions, however, are without merit.

Our review of the FDIC's opposition to KBS's motion for summary judgment

reveals that the FDIC did not raise its "substantial compliance" argument. The FDIC's citations to the record pertain to other arguments regarding the timeliness of the Bank's claim, not substantial compliance. See Aplt. Br. at 7 n.13 & n.15 (citing 2 Aplt. App. 306–10). Indeed, the phrases "substantial compliance" and "substantially complied" do not appear in the FDIC's opposition to summary judgment, nor do the principal cases upon which the FDIC now relies, namely Hartford Fire Insurance Co. v. Smith, 3 Colo. 422 (Colo. 1877) and Wells Fargo Business Credit v. American Bank of Commerce, 780 F.2d 871 (10th Cir. 1985). While the FDIC did argue that proof-of-loss requirements should be construed reasonably, see 2 Aplt. App. 313–14, this is distinct from arguing that only substantial compliance is required under Colorado law. The district court was never fairly presented with this issue. Further, it does not follow that a reasonable construction of proof-of-loss requirements obviates the need for full compliance, or that strict compliance is inherently unreasonable.

An examination of the record also demonstrates that the FDIC did not preserve its substantial compliance argument in its motion for reconsideration. The citations that the FDIC provides, again, pertain to other arguments, such as its contention that Condition 14 is ambiguous and the Bank's compliance with the provision is an issue of fact. See Aplt. Br. at 7 & n.14 (citing 1 Aplt. App. 125–29). Although the district court noted that the FDIC argued in passing "the Bank's proof of loss not only substantially complied, but also strictly complied under any fair and reasonable construction," the district court characterized the argument as one that the bond granted too much discretion to KBS.

- 11 -

FDIC, 2015 WL 4882496, at *3.  The record confirms that the FDIC did not raise any discussion about substantial compliance until its reply brief in its motion for reconsideration.  See 1 Aplt. App. 151.  Even if this brief reference is sufficient to preserve the argument for appeal, the argument was raised too late.  See M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n.7 (10th Cir. 2009).

The FDIC also has not demonstrated that its substantial compliance argument is a pure matter of law for which the proper resolution is certain.  The FDIC asserts that Colorado law is clear that only substantial compliance is required.  Aplt. Reply Br. at 21 (citing Hartford Fire Ins. Co., 3 Colo. at 425).  Although the Colorado Supreme Court stated in an 1877 decision that "there must be a substantial compliance with the terms of the policy in furnishing the preliminary proofs before the assured are entitled to any indemnity in case of loss" in a dispute arising from loss from a fire, Hartford Fire Ins. Co., 3 Colo. at 425, more recent authority from the Colorado courts suggests that strict compliance with a contractual provision is required if time is of the essence.  See, e.g., Hopkins v. Underwood, 247 P.2d 1000, 1002 (Colo. 1952) ("Where time is the essence of a contract, it means that the provision in the contract which fixes the time of performance is to be regarded as a vital term of the contract . . . ."); Sports Premiums, Inc. v. Kaemmer, 595 P.2d 696, 699 (Colo. App. 1979); see also Ranta Constr., Inc. v. Anderson, 190 P.3d 835, 841 (Colo. App. 2008) (indicating that where time is of the essence in a contract, one party's failure to timely perform discharges the other party of the duty to perform).  While we are mindful of our decision in Wells Fargo Business

- 12 -

Credit, 780 F.2d at 871, in which we determined that substantial compliance with notice and proof-of-loss requirements of an insurance policy was sufficient under New Mexico law, in a prior case between FDIC and KBS we held that "where time is of the essence substantial compliance with a specific time requirement is insufficient." FDIC v. Kansas Bankers Sur. Co., 963 F.2d 289, 294 (10th Cir. 1992) (applying Oklahoma law). In that case, we considered a provision that is analogous to Condition 14 at issue here, and concluded that the provision explicitly demonstrated that the parties intended to make time of the essence. Id. at 292, 294. The FDIC fails to distinguish this precedent in either of its briefs. While we need not decide the issue, its resolution is not obvious.

B.     Public Policy

The FDIC did, however, raise its public policy argument below. To support its argument on appeal that the district court's interpretation of Condition 14 violates public policy, the FDIC turns to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), which provides, in pertinent part, that when the FDIC is appointed as the receiver of a failed bank, it "succeed[s] to — all rights, titles, powers, and privileges of the insured depository institution . . . with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i); see also Aplt. Br. at 45. This statutory provision indicates that the FDIC "steps into the shoes" of the failed bank and inherits the rights of the bank prior to receivership. O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994).

In light of this, the FDIC argues that it succeeded to all rights the Bank possessed

under the bond at the time of the Bank's failure. This includes the right to pursue the Bank's coverage claim against KBS, because the Bank would have had the right to enforce the coverage claim after termination of the bond had it not failed. Aplt. Br. at 45–47. The FDIC relies on FDIC v. St. Paul Companies, 634 F. Supp. 2d 1213 (D. Colo. 2008), where the court determined that the termination of a bond resulting from takeover by the FDIC did not terminate liability because the insured bank need only have discovered the loss prior to the takeover for the right to enforce the coverage claim to vest. Aplt. Br. at 47–50. Accordingly, the FDIC contends that it similarly possesses the right to pursue the Bank's coverage claim because the Bank discovered the loss prior to takeover by the FDIC and would have been able to submit the proof of loss after the pending third-party action against the Bank was resolved. Id. at 7, 47–50. Therefore, the FDIC argues, denying the FDIC the ability to enforce coverage runs counter to public policy because it restricts the exercise of the Bank's rights by the FDIC. Id.

The FDIC's arguments fail for two reasons. First, both federal and Colorado law expressly permit provisions like Condition 14 to limit the otherwise broad powers of receivers like the FDIC. See 12 U.S.C. § 1821(e)(13)(A);[1] Colo. Rev. Stat. § 11-103-

---

[1] "The conservator or receiver may enforce any contract, other than a director's or officer's liability insurance contract or a depository institution bond, entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of or the exercise of rights or powers by a conservator or receiver." 12 U.S.C. § 1821(e)(13)(A).

- 14 -

601(4)(a)(II).[2] Second, while the FDIC now stands in the shoes of the Bank, the FDIC has no right to enforce a coverage claim against KBS that the Bank did not have. As the district court correctly found, a proof of loss, duly sworn, with full particulars and complete documentation was a condition precedent to coverage pursuant to Condition 14, and such proof was never furnished to KBS prior to the FDIC's takeover. FDIC, 105 F. Supp. 3d at 1243–45. Because coverage never vested before the FDIC took over, the Bank, and consequently the FDIC, never acquired the right to enforce the bond.

Further, the FDIC's reliance on FDIC v. St. Paul Companies, 634 F. Supp. 2d at 1213, is unavailing. There, a proof of loss was not a condition precedent to coverage. This court has emphasized the difference between bonds that contain express language making strict compliance with notice requirements a condition precedent to recovery and those that do not. See FDIC v. Oldenburg, 34 F.3d 1529, 1546 (10th Cir. 1994). It follows that there is also a distinction between bonds that contain express language making a proof of loss a condition precedent to coverage and those that do not. Because Condition 14 of the bond at issue here made proof of loss a condition precedent to

---

[2] "The general assembly hereby finds, determines, and declares that the following is enforceable and in conformity with the public policy of this state . . . : Any fidelity bond, financial institution bond, or depository institution bond in effect or issued on or after April 30, 1993, that provides for termination of such bond upon the taking over of the bank by a receiver or other liquidator or by state or federal officials." Colo. Rev. Stat. § 11-103-601(4)(a)(II).

- 15 -

recovery, and the bond in <u>St. Paul Companies</u>, 634 F. Supp. 2d at 1219, did not, the

district court's decision in <u>St. Paul Companies</u> is inapposite.

AFFIRMED.