FILED
United States Court of Appeals
Tenth Circuit

May 2, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE REMBERTO GUZMAN-
DOMINGUEZ,

    Defendant - Appellant.

No. 24-2063
(D.C. Nos. 2:20-CV-00745-RB-KK &
2:16-CR-00580-RB-KK-1)
(D. N.M.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

A jury convicted Jose Remberto Guzman-Dominguez of drug conspiracy and

possession offenses.  We affirmed his and his co-defendant's convictions.  *United States*

*v. Rodriguez-Flores*, 907 F.3d 1309 (10th Cir. 2018).  Mr. Guzman-Dominguez then filed

a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  The district

court denied his motion, and he seeks to appeal the denial.  To do so, he requires a

certificate of appealability (COA).  On consideration, we deny a COA and dismiss this

matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

### 1.  Mr. Guzman-Dominguez's conviction and sentence

We have described the basic facts underlying Mr. Guzman-Dominguez's conviction as follows:

> On November 14, 2015, at 12:29 a.m., Guzman-Dominguez drove his commercial truck into the state port of entry on Interstate 10 near Lordsburg, New Mexico.  [Miguel Angel] Rodriguez-Flores was his sole passenger.  Inspector Jesus Salcedo was assigned to do level 1 inspections, which involve examining paperwork, the truck, and the cargo.  Salcedo testified that as he was examining the underside of the vehicle, Guzman-Dominguez was unusually chatty.  Guzman-Dominguez told the inspector that he had just installed new brakes, but Salcedo, a former mechanic, testified that there were no new brakes.
>
> When Salcedo searched the cargo area of the truck, he saw 17 four-foot-by-four-foot totes (plastic containers inside metal cages) filled with liquid chemical cleaner.  Each tote weighed about 2400 pounds.  According to the bill of lading, signed by Rodriguez-Flores but given to Salcedo by Guzman-Dominguez, the totes had been picked up the previous day from Mirachem, an industrial-cleaner manufacturer in Phoenix, Arizona.  Climbing into the truck and over the totes, Salcedo discovered four cardboard boxes, which were unaccounted for in the bill of lading.  One box was open, and he saw green saran-wrapped bundles inside.  From his training he believed the boxes contained narcotics, so he returned to his booth to report the discovery.  (It was later determined that the boxes contained 47.9 kilograms of cocaine and 5.24 kilograms of heroin.)

*Rodriguez-Flores*, 907 F.3d at 1313.

A federal indictment charged Mr. Guzman-Dominguez with three criminal counts: (1) conspiracy to distribute at least five kilograms of cocaine and at least one kilogram of heroin, *see* 21 U.S.C. § 846; (2) possession with intent to distribute at least five kilograms of cocaine, *see id.* §§ 841(a)(1) and (b)(1)(A); and (3) possession with intent to distribute at least one kilogram of heroin, *see id.*  A jury convicted him of all three counts.  The district court sentenced him to concurrent terms of incarceration of 180 months.

2

### 2. Our direct appeal decision

On direct appeal, Mr. Guzman-Dominguez's co-defendant challenged the sufficiency of the evidence presented at trial that he knew about the drug cargo. We rejected his challenge, characterizing it as "border[ing] on the frivolous." *Rodriguez-Flores*, 907 F.3d at 1318. We concluded there was "compelling evidence that the drugs were added to the cargo after Defendants picked up the chemical cleaner, that Defendants were together and controlled the truck from the time of that pick-up until their arrests a few hours later, and that they were close associates who were working together in the venture." *Id.* at 1313.

Both defendants also challenged the testimony of an expert witness, Agent Joseph Montoya. They contended Montoya improperly expressed an opinion about their credibility. Because neither defendant had objected to the testimony at trial or requested a limiting or corrective instruction, we reviewed only for plain error. We determined defendants met the first two elements of the plain-error test because "it was clearly error to permit Montoya to testify to his opinion that drug couriers who deny knowledge of the drugs are lying." *Id.* at 1321. But they had not shown the third component of the plain-error test, which requires an infringement of their substantial rights, for three reasons: "(1) Montoya did not present himself as an expert on indicia of truth-telling; (2) the incriminatory gist of the challenged statement was presented to the jury through other testimony that was not challenged at trial and is not challenged on appeal; and (3) the evidence against Defendants was very strong." *Id.* at 1322. We therefore concluded defendants were not entitled to relief.

### 3.    The district court's decision on this § 2255 motion

Mr. Guzman-Dominguez filed his pro se amended § 2255 motion in November 2020.[1]  A magistrate judge considered the motion, the parties' submissions, the record, and the relevant law, and recommended that the motion be denied.  The district court overruled Mr. Guzman-Dominguez's objections and adopted the magistrate judge's proposed findings and recommended disposition.  It dismissed the motion with prejudice and denied a COA.

## DISCUSSION

The granting of a COA is a jurisdictional prerequisite to an appeal from the denial of a § 2255 motion.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  To obtain a COA, Mr. Guzman-Dominguez must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires him to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted).  In addition, because the district court in this case denied at least one of Mr. Guzman-Dominguez's claims on procedural grounds, he must also, with respect to those claims, show "that jurists of reason would find it debatable

---

[1] Mr. Guzman-Dominguez filed an initial motion in July 2020 that consisted primarily of a handwritten letter in Spanish accompanied by an English translation.  He later filed an amended motion on a court form, attaching to it his original letter.  The district court considered the arguments he made in both the form motion and the accompanying letter.

whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[2]

### 1. Agent Montoya's Testimony

As noted, we previously denied Mr. Guzman-Dominguez's claim that the district court improperly permitted Agent Montoya to testify about the credibility of drug couriers.[3]  He now re-urges that claim under the rubric of ineffective assistance of counsel.  He argues his trial attorney's failure to object to the improper testimony resulted in his claim receiving only plain error review on appeal.

---

[2] We construe Mr. Guzman-Dominguez's pro se briefing liberally but do not serve as his advocate.  *Luo v. Wang*, 71 F.4th 1289, 1291 n.1 (10th Cir. 2023).

[3] In our direct appeal decision, we quoted Agent Montoya's testimony:

Q: During the course of your career at DEA, approximately how many drug traffickers have you debriefed?
A. That would be hundreds of drug traffickers.
Q. And during those debriefings, did any of these drug traffickers ever tell you things that were not true?
A. Yes.
Q. In your professional experience, was it common or uncommon for drug traffickers to tell you things that weren't true?
A. It was common.
Q. Okay. And have you been involved in cases in which people who were found transporting drugs claimed to have no knowledge of those drugs?
A. Yes.
Q. *Did you generally believe these people were telling the truth when they told you they didn't know about the drugs they were transporting?*
A. *No.*

*Rodriguez-Flores*, 907 F.3d at 1321.

To present a successful claim for ineffective assistance of counsel, Mr. Guzman-Dominguez "must show [1] that counsel's performance fell below an objective standard of reasonableness and [2] that he was prejudiced thereby, which entails demonstrating a reasonable probability of a more favorable outcome absent counsel's deficient performance." *Tryon v. Quick*, 81 F.4th 1110, 1140-41 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2586 (2024) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The district court concluded Mr. Guzman-Dominguez had not shown prejudice. It reasoned that *Strickland*'s prejudice standard is virtually identical to the showing required to establish that a defendant's substantial rights were affected by a plain error. So, because this court had already determined that Mr. Guzman-Dominguez failed to show his substantial rights were affected, he also necessarily failed to demonstrate prejudice under the *Strickland* analysis.

Mr. Guzman-Dominguez characterizes the district court's analysis as an "over-simplification" that "misses [his] primary point" that absent his attorney's failure to object, his direct appeal "would have been reviewed under a different standard which could have changed the outcome." COA Appl. at 5. He relies on *Cannon v. Mullin*, 383 F.3d 1152, 1174 (10th Cir. 2004), *abrogated on other grounds by Cullen v. Pinholster*, 563 U.S. 170 (2011), for the proposition that *Strickland*'s prejudice standard is more solicitous to a defendant's rights than the plain error standard. As we understand his argument, he contends we should not directly compare the "substantial rights" standard with *Strickland*'s prejudice standard, as the district court did. Instead, we should add a step to the analysis by first determining the substantive standard this court would

6

have applied on appeal had counsel objected, and then by assessing whether

Mr. Guzman-Dominguez suffered *Strickland* prejudice by forfeiting the potential

outcome, under *that* standard, of a properly preserved argument.

But we discern no difference in the result even if we were to apply such an

analysis.  Had trial counsel objected to the expert's testimony, we would have assessed

on appeal whether any error was harmless.  *See United States v. Cordova*, 25 F.4th 817,

828 (10th Cir. 2002) (on appeal, we "will not disturb a defendant's conviction based on

erroneous admission of evidence if the error is harmless").  And a "non-constitutional

error, such as a decision whether to admit or exclude evidence, is considered harmless

*unless a substantial right of a party is affected*."  *United States v. Chavez*, 976 F.3d 1178,

1204 (10th Cir. 2020) (emphasis added) (brackets and internal quotation marks omitted).

Given our conclusion that any error did not affect Mr. Guzman-Dominguez's substantial

rights, *Rodriguez-Flores*, 907 F.3d at 1322, we would reach the same result even if trial

counsel had preserved the issue by objecting.  It thus follows that trial counsel's failure to

object did not prejudice Mr. Guzman-Dominguez under the *Strickland* standard, because

there was no reasonable likelihood of a different outcome even if trial counsel had

objected.  The district court's rejection of this claim was thus not reasonably debatable.

### 2.  *Allen* instruction

After it had deliberated for two and a half hours, the jury sent the court the

following note: "Some feel that the government did not provide concrete evidence and

some feel that the government did provide enough evidence.  Therefore, we've not come

to an agreement."  R., vol. 12 at 71-72 (quoting R., vol. 11 at 3).  In response to the note,

the trial court proposed an instruction as follows: "Ladies and gentlemen, please continue to deliberate and reach agreement, if you can. Two and a half hours of deliberation after three days of trial may not be enough. Lunch is on the way. We will await further word. Thank you." R., vol. 11 at 5. Based on a comment by Mr. Guzman-Dominguez's counsel, the court added language to the proposed instruction referring the jurors to its previous instruction describing their duties. It then gave the proposed instruction as modified. The jury thereafter returned its guilty verdict.

Mr. Guzman-Dominguez argues his counsel acted ineffectively by failing to either argue for a proper charge under *Allen v. United States*, 164 U.S. 492, 501-02 (1896), or by not pushing for a determination that the jury was deadlocked. His arguments boil down to whether counsel performed deficiently, to his prejudice, by failing to object to what he contends was an improper *Allen* instruction. And that in turn depends on whether the instruction was improperly coercive.

"A district court must not deliver an improperly coercive *Allen* instruction." *United States v. Coulter*, 57 F.4th 1168, 1192 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 143 S. Ct. 2627 (2023). In assessing whether the instruction was improperly coercive, we consider four factors: "(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." *Id.* (internal quotation marks omitted).

The district court concluded that an analysis of these factors showed the instruction was not coercive. Mr. Guzman-Dominguez challenges the district court's

conclusion concerning the fourth factor, the length of the jury's subsequent deliberations. The district court reasoned that although it was unclear how long the jury deliberated after the *Allen* charge, that factor was not dispositive. Mr. Guzman-Dominguez contends this means the court improperly discounted the time factor altogether. But even if this is true his argument does not warrant a COA. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) (this court may deny a COA on any basis in the record, even if not relied on by the district court).

Although the record is unclear about the precise length of the jury's subsequent deliberations, it does provide some useful indications. The court finished drafting its proposed *Allen* instruction at 11:58 a.m. The court then submitted the instruction to the jury. The court recessed, after which the jury submitted a note indicating that they had reached a verdict. That note was marked 1:20 p.m. Thus, approximately one hour and twenty minutes elapsed from the time the court submitted its *Allen* instruction until the jury reached a verdict.

Although a "relatively long period" of deliberation "tends to negate an inference of improper coercion," *Coulter*, 57 F.4th at 1193 (internal quotation marks omitted), the opposite is not necessarily true. We have approved *Allen* instructions where juries deliberated for a relatively short time after receiving the instruction. *See, e.g.*, *United States v. Arney*, 248 F.3d 984, 990 (10th Cir. 2001) (one hour); *United States vs. McKinney*, 822 F.2d 946, 950 (10th Cir. 1987) (verdict on twenty-nine counts returned one hour and twenty minutes after receiving an *Allen* instruction); *Munroe v. United States*, 424 F.2d 243, 246 (10th Cir. 1970) (forty minutes). Mr. Guzman-Dominguez

fails to show a debatable issue concerning whether the short deliberation time in his case meant the trial court gave a coercive *Allen* instruction.

Mr. Guzman-Dominguez also argues that instead of cooperating in crafting the instruction, his counsel should have urged the court to accept the jury's "deadlocked" verdict. But when a jury indicates that it is unable to reach a verdict, the trial court is not required to accept such representation and may require it to continue deliberating. *See Arney*, 248 F.3d at 989. Here, the jury had only debated for two and one-half hours after a three-day trial. Mr. Guzman-Dominguez fails to show it is debatable whether his attorney could have obtained a different outcome (i.e., a mistrial) by arguing in favor of accepting the deadlocked verdict.

He also suggests counsel should have asked the court to instruct the jury to evaluate his culpability separate from his co-defendant's. But the jury's note did not suggest its deadlock had anything to do with the relative strength of the evidence against each defendant. And the instructions the court had already given made it abundantly clear the jury should evaluate each defendant's culpability separately. *See, e.g.*, R., vol. 3 at 178 ("There is more than one defendant on trial in this case. Each defendant is entitled to have you determine his guilt separately and individually. . . . The government has the burden of providing beyond a reasonable doubt the guilt of each defendant separately. When you consider the evidence it is your duty to examine it carefully as to the charges against each defendant separately, as if he were on trial alone.").

Mr. Guzman-Dominguez is not entitled to a COA on this issue.

**3. Procedural Issues**

10

### A. Obstruction of justice enhancement

In sentencing Mr. Guzman-Dominguez, the trial court imposed an enhancement for obstruction of justice. *See* U.S. Sentencing Guidelines Manual § 3C1.1 (2016). He contends his attorney should have objected to the enhancement. Mr. Guzman-Dominguez did not raise an issue about this enhancement in his § 2255 motion. Instead, he attempted to challenge the enhancement through a motion to supplement his reply brief. The district court declined to reach this issue, finding it could have been asserted on direct appeal and Mr. Guzman-Dominguez had raised it for the first time in an untimely motion seeking to supplement his reply.

A district court need not address arguments made for the first time in a reply brief. *See, e.g.*, *FDIC v. Kan. Bankers Sur. Co.*, 840 F.3d 1167, 1173 (10th Cir. 2016) (argument first made in a motion-to-reconsider reply brief was "raised too late"). On appeal, Mr. Guzman-Dominguez raises a number of arguments challenging the district court's procedural ruling. None has debatable merit that warrant the issuance of a COA.

He also argues that notwithstanding his procedural default, this court should reach the merits of this issue under plain error review, or in the exercise of discretion. *See, e.g.*, *United States v. Bowline*, 917 F.3d 1227, 1232 (10th Cir. 2019) ("failure to timely assert a right ordinarily merely forfeits the issue and the issue can be reviewed on appeal for plain error"). But he fails to show a debatable issue concerning whether the district court's procedural denial of this claim produced a plainly erroneous result, or whether we should reach his waived issue in the exercise of discretion.

### B. District court's review of magistrate judge's recommendation

11

Finally, Mr. Guzman-Dominguez contends that the district court's blanket statement that it agreed with the magistrate judge's findings provides insufficient evidence that it independently reviewed the issues.[4]  We cannot grant a COA solely based on this procedural issue.  *See United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) ("Under the Antiterrorism and Effective Death Penalty Act . . . a COA may issue only when the applicant has made a substantial showing of the denial of a *constitutional* right." (internal quotation marks omitted)).  In addition, although a district court must make a de novo determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the court is not precluded from relying on the Magistrate Judge's report and recommendation.  *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." (quoting § 636(b)(1))).  A COA is not warranted on this claim.

---

[4] The district court stated:

> Pursuant to Federal Rule of Civil Procedure 72(b), the Court conducted a de novo review of the record and all parts of [Magistrate] Judge Khalsa's [Proposed Findings and Recommended Disposition] that have been properly objected to.  After conducting a de novo review and having thoroughly considered the PFRD and Guzman-Dominguez's objections, the Court finds that a response to the Objections is unnecessary.  The Court further finds no reason either in law or fact to depart from Judge Khalsa's recommended disposition.

R., vol. 12 at 156.

## CONCLUSION

We deny a COA and dismiss this matter.

Entered for the Court

Joel M. Carson III
Circuit Judge